SALVADOR RIVERA RUIZ ET AL., Plaintiffs and Appellees, *v.* MUNICIPALITY OF SAN JUAN, Defendant and Appellant.

No. R-67-166.          Decided January 18, 1968.

*J. R. Lebrón Velázquez, Edwin Andújar,* and *Josefina Riollano* for appellant. *J. M. Toro Nazario* for appellees.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bagés.

PER CURIAM: We issued a writ to review the judgment rendered by the San Juan Part of the Superior Court, ordering the Municipality of San Juan to pay to the children, grandchildren, and brothers or sisters of María Ruiz Ocasio, certain amounts of money for damages.

The facts on which the judgment is based were stipulated by the parties at the beginning of the hearing of the case. We copy the stipulation from the record:

"Mr. Lebrón Velázquez:

"Your honor, on January 14, 1960, Salvador Rivera Ruiz, one of the plaintiffs, represented in the suit, entered into a contractual relation with the Municipality of San Juan, by executing a lease contract of a grave in the former cemetery of Monacillos, in Río Piedras, in which the body of María Ruiz, the mother of plaintiff herein, was buried. This lease was executed by the parties and then they erected over the grave a sign with the name of the deceased, of a removable type, with a pipe, because there was no concrete grave.

"Judge:

"Was there no tomb?

"Mr. Lebrón Velázquez:

"There was no tomb.

"Judge:

"Was the parcel of land the only thing leased?

"Mr. Lebrón Velázquez:

"Yes, sir. Subsequently, on March 1, 1962, the Municipality of San Juan, in a nearby property in the same cemetery, sold a parcel of land to Roberto Belber, to bury there the body of Vicente Belber. The relatives of Belber built a concrete tomb

with a gravestone, and that structure and that grave partially invaded the land leased to Salvador Ruiz Rivera, Rivera Ruiz, for the lease [*sic*] of his mother, María Ruiz. On one occasion, Rivera Ruiz and some of his relatives went to his mother's grave to offer their respects in a memorial act and they discovered that the removable object which identified María Ruiz' grave was not in the place in which they had left it. They immediately notified the Authorities of the Municipality and an investigation was begun by the Municipality of San Juan. Subsequently, Mrs. Adelaida Vicente Souffront, of the Legal Division of the Municipality of San Juan, summoned Mr. Toro Nazario and some relatives of María Ruiz, among them, Salvador Rivera Ruiz, the leaseholder. According to the fifth clause of the lease contract, which is similar in its text to the lease contract [*sic*], the Municipality of San Juan began to remove Belber's corpse and placed it somewhere else, on its own account, at the expense of the Municipality of San Juan. The tomb then having been opened, according to the authority given by the contract, which states: 'that if at any time it were necessary to change the location or eliminate the grave which exists on the parcel of land sold or leased, the Municipality of San Juan reserves the right to do so, as an express and essential condition of this sale and by reasons of public policy, and shall do so according to Public Health laws,' it summoned colleague Toro Nazario and the relatives of María Ruiz. Mrs. Souffront and the engineer Luis A. Brignoni also appeared there for the purpose of demonstrating to them that the Municipality of San Juan had had no intention to intervene with the property which had been leased to them; that that construction on the other side did not belong to the Municipality of San Juan, but to the family of Vicente Belber, and they began to dig a hole on the grave of María Ruiz to show that it was the corpse of Salvador Rivera Ruiz' mother, and it was thus done in the presence of colleague Toro Nazario and the other persons mentioned. The engineer Luis A. Brignoni ordered that the grave where the corpse was be covered.

"Judge:

"After taking out the corpse?

"Mr. Lebrón Velázquez:

"The corpse was never taken out. The ground was simply dug and the corpse was shown to them.

"Judge:

"Was the coffin opened?

"Mr. Lebrón Velázquez:

"The coffin was there. A hole was dug and they were satisfied that it was actually the corpse of Mrs. Ruiz.

"Judge:

"The complaint says, I believe, that the coffin was taken out and that it was opened, and that it was exposed a number of hours and that a corpse was seen which could hardly be identified.

"Mr. Lebrón Velázquez:

"No, Judge. The corpse was left where it was, in the coffin and in the same place, without opening it. The coffin was opened to show them that it was the corpse, so that by the personal description they could verify the good faith of the Municipality of San Juan. However, when the coffin and grave were covered, at the bottom, the pile of dirt was left on the side, it was not totally covered because the intention of the Municipality of San Juan was to offer the relatives the grave they had acquired. No agreement was reached and then the allegation of Salvador Rivera Ruiz is that he went there seventeen days later and he saw that the grave had not been covered yet.

"Judge:

"But they covered the coffin; what they left uncovered was the surface of the land?

"Mr. Lebrón Velázquez:

"Yes, sir. The gentleman admits that it is so, but he had the impression that the grave was not covered. Your Honor, because of these facts, as recited to this court, the plaintiff believes that he has suffered moral damages and mental anguish. Both parties, we beg the court, to decide according to this stipulation and to render the judgment it deems proper.

"Judge:

"Is that the stipulation?

"Mr. Toro Nazario:

"It is the stipulation.

"Judge:

"I shall decide on those grounds. Thus submitted. Have it transcribed according to the former instructions given by me." (Tr. of R., pp. 24 to 30.)

On the basis of that stipulation of facts, the trial court made the following conclusions of law:

"I.—The owner of a land devoted to a cemetery, who after leasing a parcel of land so that it may be used to bury a corpse permits that the grave formerly leased be violated, commits tort and also breaches the lease contract and is liable for damages because of said breach. *Camacho* v. *Catholic Church*, 72 P.R.R. 332.

"II.—A vault in a cemetery having been leased, the damages claimed by the tenants thereof because of moral suffering due to the violation thereof on the landlord's part, are those which can be foreseen by the landlord and are clearly a necessary consequence of his breach of the lease." (Tr. of R., pp. 34 and 35.)

Unlike what happened in *Camacho, supra,* the evidence herein does not establish a breach of the lease contract on the part of the Municipality of San Juan, nor that the grave of María Rivera Ruiz was violated.

There being no grounds to conclude that the defendant-appellant Municipality committed tort, the judgment rendered against it will be reversed and another will be rendered dismissing the complaint.